UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JORGE LUIS WALTER ORTIZ,

Petitioner,

v.

MARKWAYNE MULLIN et al.,

Respondents.

CASE NO. 2:26-cv-03495-DGE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1)

Before the Court is Petitioner Jorge Luis Walter Ortiz's petition for writ of habeas corpus. (Dkt. No. 1.) Petitioner contends Respondents violated his due process rights by re-detaining him without prior notice and an opportunity to be heard. (*Id.* at 6, 10–13.) For the following reasons, the Court GRANTS his petition for writ of habeas corpus.

## I. BACKGROUND

On August 21, 2022, Petitioner, a Venezuelan national and citizen, entered the United States without authorization near El Paso, Texas. (Dkt. Nos. 1 at 2, 4; 6 at 4; 7 at 2.) The United States Border Patrol ("USBP") encountered Petitioner that day and transported him for

processing. (Dkt. No. 7 at 2.) USBP issued an expedited removal order for Petitioner on August 31, 2022. (Dkt. No. 8-1.) Petitioner claimed fear of removal to Venezuela so was referred to United States Citizenship and Immigration Services ("USCIS") for a credible fear interview ("CFI"). (Dkt. No. 7 at 2.) On September 1, 2022, Respondents state Petitioner was granted parole under 8 U.S.C. § 1182(d)(5)(A), released from immigration custody, and enrolled in an Alternatives to Detention ("ATD") program under an Order of Release on Recognizance ("OREC"). (Dkt. Nos. 6 at 4; 7 at 2.)[1]

After his release, Petitioner moved to the Portland, Oregon area. (Dkt. No. 1 at 3.) Petitioner submitted a timely application for asylum and related relief. (*Id.* at 2.) His application for asylum remains pending. (Dkt. No. 8-3 at 4.) Petitioner asserts he filed for and receive employment authorization in 2023. (Dkt. No. 9 at 4.) Petitioner has no criminal record. (Dkt. Nos. 1 at 3; 8-3 at 4.)

On August 10, 2024, USCIS issued a Notice to Appear ("NTA") charging Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and 8 U.S.C. § 1182(a)(6)(A)(i). (Dkt. Nos. 7 at 2, 4; 8-2 at 2.) The NTA checked a box stating Petitioner was "present in the United States [and] has not been admitted or paroled. (Dkt. No. 8-2 at 2.) The NTA ordered Petitioner to appear before an immigration judge on March 30, 2027. (*Id.*)

Petitioner maintains that he fully complied with the ATD program, including by reporting to the Portland, Oregon ICE Field Office and submitting monthly "selfies" through the BI SmartLINK mobile application. (Dkt. No. 1 at 2–3.) BI is a government contractor for the ATD program. (Dkt. No. 6 at 4.) Respondents state Petitioner violated his OREC as the BI record

[1] Petitioner stated he was released from detention on his own recognizance on or around September 4, 2022. (Dkt. No. 1 at 2.)

reflects "a successful check-in outside the authorized zone on May 23, 2025, two "no location received" entries on December 5, 2025, and a missed self-report check-in on June 20, 2026. (Dkt. Nos. 6 at 4; 7 at 2–3.)

On September 3, 2026, an ICE officer pulled Petitioner over during his morning commute to his job in Hillsboro, Oregon. (Dkt. No. 1 at 2.) Respondents arrested Petitioner. (Dkt. Nos. 6 at 5; 8-3 at 3.) Respondents state that DHS issued a cancellation of Petitioner's release that day and generated an administrative warrant prior to arrest. (Dkt. Nos. 7 at 3; 8-4 at 3; 8-5 at 2.) The cancellation notice states, "ICE cancelled the most current Order of Release on Recognizance." (Dkt. No. 8-5 at 2.) It contains the signature of an ICE official without further reasoning or indication that Petitioner received the notice. (*Id.*) The administrative warrant indicates the immigration officer was authorized to serve warrants of arrest for immigration violations "pursuant to sections 236 and 287 of the Immigration and National Act and part 287 of title 8, Code of Federal Regulations." (Dkt. No. 8-4 at 3.)

Petitioner has been detained at the Northwest Ice Processing Center ("NWIPC") since. (Dkt. No 1 at 4.) Petitioner, proceeding with counsel, filed this petition on September 18, 2026. (Dkt. No. 1.) Respondents filed a return on October 5. 2026. (Dkt. No. 6.) Petitioner filed his traverse on October 7, 2026. (Dkt. No. 9.)

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v.*

*Bostock*, Case No. 2:24-cv-00326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, Case No. 2:24-cv-00326-JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241(c)(3)).

## III. ANALYSIS

### A. Petitioner is not subject to mandatory detention 8 U.S.C. § 1225(b).

Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii). (Dkt. No. 6 at 2, 5–7.) § 1225 applies to "applicants for admission" to the United States, who are defined as noncitizens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. On the other hand, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings*, 583 U.S. at 287. Noncitizens falling within § 1225(b) are subject to mandatory detention. *See* 8 U.S.C. § 1225(b)(1)(B) *and* § 1225(b)(2)(A). The provision of § 1225(b) that Respondents argue Petitioner is detained under, § 1225(b)(1)(B)(ii), applies to noncitizens who an immigration officer has determined have a credible fear of persecution and requires they "shall be detained for further consideration of the application of asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Individuals detained under § 1225 can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention.

*Jennings*, 583 U.S. at 303. Section 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

Respondents have failed to put forth evidence indicating Petitioner is presently detained under § 1225. The Court considers the factual circumstances following a petitioner's entry when determining the relevant detention authority. *See Del Valle Castillo v. Wamsley*, Case No. 2:25-cv-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (finding that "where a petitioner has been treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225, the former is more likely to apply." (quotations omitted)); *see also Victoriano v. Mullin*, Case No. 2:26-cv-00886-RAJ, 2026 WL 1194596, at *3 (W.D. Wash. May 1, 2026) ("Courts in this District have repeatedly . . . concluded that petitioners who are released on an OREC and subsequently re-detained are subject to Section 1226(a)," even if they "appear to have been apprehended upon arrival prior to their initial release on recognizance." (quotations omitted)).

First, Respondents have not provided evidence demonstrating Petitioner received humanitarian parole upon release in September 2022. Individuals subject to § 1225 can only be released on parole "on a case-by-case basis" for "urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A). The record indicates Petitioner was released on his own recognizance: Respondents provided no evidence the release was based on a case-by-case determination for "urgent humanitarian reasons" or for "significant public benefit." (*See* Dkt. No. 7 at 2.) Nor did Respondents identify the dates or length of Petitioner's purported parole period. No Form I-94, which provides proof of parole, was in the record. Moreover, the Court notes the government's documentation of Petitioner's arrest does not cite the expiration of his parole as the reason for his arrest and re-detention. (Dkt. No. 8-3.)

Respondents have not treated Petitioner as a noncitizen with parole, so it follows they have not treated him as subject to § 1225.

Second, Respondents provided evidence demonstrating they instead treated Petitioner as subject to discretionary detention under § 1226. The August 10, 2024 NTA (Dkt. No. 8-2) does not identify Petitioner is an "arriving alien," which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation. 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass 2025) (concluding "arriving alien" language synonymous with § 1225). Instead, the NTA indicates Petitioner was "an alien present in the United States who has *not* been admitted or paroled." (Dkt. No. 8-2) (emphasis added.)

Additionally, release on recognizance is synonymous with release pursuant to § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Though Respondents did not provide the Court with Petitioner's Form I-220, which typically outlines the condition of release, when Petitioner was re-detained, his release was revoked based on his alleged violations of those conditions. (*See* Dkt. No. 8-3 at 4.) The administrative warrant Respondents provided indicated ICE executed Petitioner's arrest under their authority pursuant to sections 236 and 287 of the Immigration and Nationality Act, again showing Respondents treated Petitioner as subject to § 1226 rather than § 1225. (Dkt. No. 8-4 at 3.)

Third, issuance and service of an NTA constitutes written notice that parole is terminated. 8 C.F.R. § 212.5(e)(2)(i). Thereafter, a noncitizen shall again be released on parole only if a "*removal order* cannot be executed within a reasonable time." *Id.* (emphasis added). Here, Petitioner was served an NTA on August 10, 2024. (Dkt. No. 8-2.) Thus, if Petitioner ever was in parole status following his release in September 2022, the service of this NTA in August 2024 terminated such status. And since Respondents did not take him into custody at that time, it shows they likely never treated Petitioner as having parole status.

These circumstances demonstrate that, since immediately after his arrival, Respondents treated Petitioner as though he was subject to § 1226. *Lnu v. Bondi*, Case No. 2:26-cv-00187-DGE, 2026 WL 395290, at *3 (W.D. Wash. May 22, 2026) ("It would make little sense for Respondents to revoke Petitioner's release on [an] order of recognizance issued pursuant to § 1226 if he was not in fact subject to § 1226's procedural framework."). Rather than subject him to mandatory detention under § 1225(b)(1) when he was released in 2022; Petitioner was released under an OREC and lived in the United States with the government's permission for four years after he presented himself at the border. (*See* Dkt. No. 1 at 2–3); *see also Herrera Gomez v. Wamsley*, Case No. 2:25-CV-02642-JNW, 2026 WL 279966, at *2 (W.D. Wash. Feb. 3, 2026); *Jennings*, 583 U.S. at 289.

Based on the record, the Court finds Petitioner is not subject to mandatory detention under § 1225.

**B. Petitioner's re-detention violated due process.**

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

2022). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors weigh in Petitioner's favor. First, Petitioner has a strong private interest in his continued liberty. Having been previously released and allowed to remain at liberty for four years, Petitioner maintained a private interest in freedom from imprisonment. Especially as Respondents have treated Petitioner as not subject to § 1225, his liberty interests have accumulated in this period. During these four years, Petitioner obtained work authorization and employment and submitted a timely application for asylum. (Dkt. Nos. 1 at 2–3; 1-2; 9 at 4).

Moving to the second *Mathews* factor, the Court finds here the risk of erroneous deprivation without any hearing is high. Courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Guevara Mejia v. Hernandez*, Case No. 2:26-cv-03089-DGE, Dkt. No. 9 at 7–8 (W.D. Wash. Sep. 24, 2026) (collecting cases). Respondents invoke both Petitioner's alleged violations of his OREC and his supposed parole revocation as reasons sufficient for his re-detention.[2] (Dkt. No. 6 at 4–7.) Even when a noncitizen's re-detention is motivated by alleged violations of release conditions, "it would not necessarily follow that Petitioner can be detained for those violations without a hearing." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

---

[2] Respondents' conflicting reasons for Petitioner's arrest and detention between alleged parole revocation and alleged violations of Petitioner's OREC also lead to a high risk of erroneous deprivation. *See Navarro Gavalo v. Scott*, Case No. 2:26-cv-03486-KKE, 2026 WL 2997801, at *4 (W.D. Wash. Oct. 6, 2026).

This Court has previously determined that merely asserting an OREC violation does not outweigh the risk of erroneous deprivation when an individual is re-detained without a pre-deprivation hearing. *See Rana v. Bondi*, Case No. 2:26-cv-00268-DGE, Dkt. No. 11 at 9 (W.D. Wash. Feb. 17, 2026) (collecting cases).

Here, Petitioner had no opportunity to dispute the facts or sufficiency of these allegations prior to his arrest and re-detention. (Dkt. No. 1 at 2–3.) All Petitioner was provided with was information that he allegedly missed OREC-required photo submissions *after* he was arrested and re-detained. (*Id.*) Respondents attempt to distinguish the body of caselaw requiring a pre-deprivation hearing by stating Respondents issued a "written notice of cancellation of release and served a custody determination on the day of arrest." (Dkt. No. 6 at 10.) However, even if this was meaningful notice, to which this Court has serious doubts as there is no indication Respondents served this notice of cancellation on Petitioner (*see* Dkt. No. 8-5), providing such documents to Petitioner *after* arrest, on the day of re-detention does not constitute notice at a "meaningful time and in a meaningful manner." *See Arevalo-Hortua v. Hernandez*, Case No. 2:26-cv-02994-JHC, 2026 WL 2797986, at *4–6 (W.D. Wash. Sept. 18, 2026) (quoting *Mathews*, 424 U.S. at 333). Additionally, the Court cannot begin to review the alleged OREC violations as Respondents have not provided the Court with the terms of Petitioner's OREC. Without proper notice or opportunity to be heard, the risk of erroneous deprivation is high.

The Court acknowledges the government has a strong interest in returning noncitizens to custody who do violate conditions of release, but there is no indication that providing Petitioner with notice and an opportunity to be heard would have impaired this interest. As such, the third *Mathews* interest also weighs in favor of Petitioner.

Weighing all three factors, the facts in this case establish that Petitioner's September 6, 2026 detention without pre-deprivation notice or hearing before a neutral decisionmaker violated due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976).

## III. ORDER

Based on the foregoing, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1), and further ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) DAY** of this Order.
2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.
3. Within **TWENTY-FOUR (24) HOURS** of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

The Clerk is directed to calendar this event, close the matter, and send uncertified copies of this Order to all counsel of record.

Dated this 14th day of October, 2026.

David G. Estudillo
United States District Judge